[Cite as *Shupert v. Shupert*, 2013-Ohio-604.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| RAY SHUPERT, | : | Case No. 12CA940 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| JENNIFER SHUPERT, | : | |
| | : | **RELEASED 02/06/13** |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Donald W. White, Esq., Nichols, Speidel & Nichols, Batavia, Ohio, for appellant.

David E. Grimes, Esq., Law Office of David E. Grimes, West Union, Ohio, for appellee.
_____

Harsha, J.

{¶1}   In this contested divorce action, Jennifer Shupert appeals the trial court's property distribution.  Ray Shupert acquired two farms before the couple married and constructed various buildings on the properties during the marriage.  Ms. Shupert contends that the court erred when it limited the marital value of the farms to the appreciation arising from construction on the land.  Ms. Shupert argues that additional appreciation is also marital property because it resulted from the couple's contributions to farm operations.  However, Ms. Shupert had the burden to establish how much of the appreciation of Mr. Shupert's separate property constituted marital property.  Other than the value added by construction, she offered no evidence of how much appreciation the land experienced during the marriage.  Moreover, she points to no evidence that establishes the value of any labor, monetary, or in-kind contribution either party made to the land.  Therefore, we cannot say that the trial court's decision was against the

manifest weight of the evidence.

{¶2}   Next, Ms. Shupert complains that the court failed to include the $64,500 in appreciation from the buildings in its calculations when it divided the couple's marital property.  We agree.  After making extensive findings on the appreciation issue, the court apparently simply overlooked this asset in its final calculations.

{¶3}   Ms. Shupert also argues that the trial court's valuation of crop insurance proceeds was against the manifest weight of the evidence.  To determine the value of this marital property, the court deducted the cost of the insurance premium from the amount of the insurance proceeds Mr. Shupert received.  In effect, the court allowed Mr. Shupert to keep the deducted amount as though he paid the premium with his separate property.  However, Mr. Shupert paid the premium with marital property.  Therefore, the marital value of the proceeds should have been the full amount of the check Mr. Shupert received.

{¶4}   In addition, Ms. Shupert contends that the court's valuation of marital livestock, which was sold after the marriage ended, is against the manifest weight of the evidence.  The livestock was owned by a farming operation in which Mr. Shupert has a 30% interest.  Ms. Shupert claims that the court's figure for the gross sale proceeds of the livestock is incorrect.  However, it is supported by the evidence Ms. Shupert herself introduced at trial.  She also claims that the court improperly reduced the gross sale proceeds by costs the court found Mr. Shupert incurred for the livestock between the marriage termination and sale dates.  We agree with this contention.  Although Mr. Shupert testified about the cost per pound to produce hogs and cattle, he failed to provide any evidence about how much of the costs were paid after the marriage

terminated. In the absence of such evidence, the marital value of the livestock should have been 30% of the gross sale proceeds.

{¶5} Next, Ms. Shupert claims that the trial court improperly gave Mr. Shupert credit for paying the couple's 2007 federal income tax debt in its property division calculations. We agree. Even though Mr. Shupert paid this marital debt after the marriage ended, he did so with marital funds, not separate property as the court's calculations suggest.

{¶6} Finally, Ms. Shupert urges us to adopt a new calculation for the division of marital property and her distributive award. However, her calculation is premised on the erroneous assumption that this Court would agree with all of her other arguments, which we do not. Moreover, we are remanding this matter to the trial court to correct its property division in light of our other findings.

## I. Facts

{¶7} The parties married in 1997 and have three children together. In November 2007, Mr. Shupert filed a complaint for divorce. Ms. Shupert filed an answer and a counterclaim for divorce. Following a bench trial, the trial court issued a decree of divorce. The court found that the stipulated termination date of the marriage was November 12, 2007, made numerous findings regarding its property division, and awarded Ms. Shupert spousal and child support. Ms. Shupert now appeals several of the court's findings concerning the property division.

## II. Assignments of Error

{¶8} Ms. Shupert assigns six errors for our review:

**First Assignment of Error:**

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE ONLY MARITAL PORTION OF THE REAL ESTATE WAS THE VALUE OF IMPROVEMENTS, i.e., THE VALUE OF BUILDINGS CONSTRUCTED ON THE LAND DURING THE MARRIAGE.**

**Second Assignment of Error:**

**THE TRIAL COURT ERRED WHEN CREDIT FOR THE CROP INSURANCE PREMIUM WAS DEDUCTED FROM THE PAYMENT RECEIVED BY THE PLAINTIFF/APPELLEE FOR THE 2007 MARITAL CROP INSURANCE.**

**Third Assignment of Error:**

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE PLAINTIFF-APPELLEE SHOULD RECEIVE CREDIT FOR THE COST OF FEEDING THE LIVESTOCK WHEN THERE WAS NO EVIDENCE TO SUPPORT THE COST.**

**Fourth Assignment of Error:**

**THE TRIAL COURT ERRED BY GIVING PLAINTIFF-APPELLEE CREDIT FOR PAYING THE 2007 FEDERAL TAXES WHEN THE TAXES WERE PAID WITH MARITAL FUNDS, NOT PERSONAL, NON-MARITAL FUNDS.**

**Fifth Assignment of Error:**

**THE TRIAL COURT ERRED IN ITS RECONCILIATION OF THE PARTIES' ASSETS/LIABILITIES IN POSSESSION BY FAILURE TO INCLUDE ANY MARITAL VALUE IN THE FARM PROPERTIES.**

**Sixth Assignment of Error:**

**THE TRIAL COURT'S RECONCILIATION WAS FLAWED AND NOT SUPPORT BY THE EVIDENCE AS SET FORTH IN THE FIRST FIVE ASSIGNMENTS OF ERROR.**

### III. Appreciation of Real Property

### A. Marital vs. Separate Property

{¶9}    In the first assignment of error, Ms. Shupert contends that the trial court erred when it determined the appreciation in value of Mr. Shupert's farms, except for the

portion related to the construction of buildings, was Mr. Shupert's separate property.

{¶10} "Generally, a court dividing property upon divorce must award each spouse his or her separate property." *Harrington v. Harrington*, 4th Dist. No. 08CA6, 2008-Ohio-6888, ¶ 11, citing R.C. 3105.171(D). "Absent an abuse of discretion, we will not reverse a trial court's property award." *Id.*, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). " 'However, a trial court's characterization of property as separate or marital is reviewed under a manifest weight of the evidence standard of review.' " *Id.*, quoting *Nance v. Nance*, 4th Dist. No. 95CA553, 1996 WL 104741, *5 (Mar. 6, 1996). Thus, the court's characterization " 'will not be reversed if it is supported by some competent, credible evidence.' " *Id.*, quoting *Nance* at *5. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "Therefore, the trier of fact determines the credibility to be afforded testimony and the weight to be given evidence." *Harrington* at ¶ 11. " 'The factfinder may accept or reject all, part, or none of the testimony of each witness.' " *Id.*, quoting *In re A.E.*, 2d Dist. No. 2006 CA 153, 2008-Ohio-1864, ¶ 15.

{¶11} Under the Revised Code, "martial property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" R.C. 3105.171(A)(3)(a)(i). It also encompasses "income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" R.C. 3105.171(A)(3)(a)(iii). "Separate

property" includes real property "that was acquired by one spouse prior to the date of the marriage[.]"  R.C. 3105.171(A)(6)(a)(ii).  "Passive income and appreciation acquired from separate property by one spouse during the marriage" is also separate property. R.C. 3105.171(A)(6)(a)(iii).  "Passive income" means income "acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."  R.C. 3105.171(A)(4).

{¶12}  Therefore, if the separate real property of one spouse appreciates during the marriage due to the labor, monetary, or in-kind contribution of either spouse, the appreciation should be characterized as marital property.  However, if the appreciation is attributable to a source outside their control, such as inflation or a change in market conditions, it should be characterized as separate property.  *See Harrington* at ¶ 12. "Generally, the spouse seeking to have a particular asset classified as separate property has the burden to prove by a preponderance of the evidence that the asset is separate property."  *Id.* at ¶ 13.  "However, once this burden is met, the spouse seeking to have any *appreciation* of that separate property classified as marital property must demonstrate that either spouse's labor, monetary, or in-kind contribution in fact *caused* an increase in the value of that separate property."  (Emphasis sic.)  *Id.*, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 400-401, 696 N.E.2d 575 (1998).

{¶13}  Mr. Shupert offered undisputed evidence that he acquired both farms before the 1997 marriage.  He obtained the Greenlee Road farm in 1988 and the State Route 770 farm in 1984.  Thus, he met his burden to prove that the farms constitute his separate property.

{¶14}  The burden shifted to Ms. Shupert to prove that any appreciation of the

farms was marital property because either spouse's labor, monetary, or in-kind contribution caused the value of the farms to increase. Mr. Shupert actually assisted Ms. Shupert in this regard because his expert, Donald Wilson, acknowledged an increase in value of the farms due to the construction of buildings on them during the marriage. The Greenlee Road farm increased in value by $57,000, and the State Route 770 farm increased in value by $15,000. Because Mr. Shupert only owns a one-half interest in the State Route 770 farm, the trial court found that there was $64,500 in appreciation to the farms that constituted marital property ($57,000 + ($15,000/2)).

{¶15} Ms. Shupert complains that both farms experienced additional appreciation during the marriage that also constitutes marital property. She argues that both farms were "working farms during the marriage, producing crops and raising livestock[,]" and Mr. Shupert invested his labor into the farms. (Appellant's Br. 4). She also claims that Wilson testified that "farming of the land, and its fertility, were factors in its value." (Appellant's Br. 4). Ms. Shupert acknowledges that there is no evidence as to how much the farms appreciated aside from Wilson's testimony about the appreciation due to buildings constructed during the marriage. She contends that Wilson appraised the Greenlee Road farm at $375,000 and the State Route 770 farm at $300,000 "after the de facto termination of the marriage." (Appellant's Br. 4). But there is no evidence about the farms' values when the parties got married. Ms. Shupert argues that it was "undoubtedly" Mr. Shupert's burden to provide such evidence. (Appellant's Br. 5). And because he did not meet this burden, she contends that the trial court should have considered the entire post-marriage appraised value of the farms as "appreciation" and classified this appreciation as marital property.

{¶16} Contrary to Ms. Shupert's argument, Mr. Shupert did not have the burden to prove the value of the farms at the time he acquired them. To establish that the farms constituted separate property, Mr. Shupert only had to show that he acquired them prior to the marriage, which he did. Thus, he was entitled to the farms regardless of their current value unless marital assets had been used to increase their value. It was Ms. Shupert's burden to prove what appreciation of the land occurred due to the labor, monetary, or in-kind contribution of either or both spouses during the marriage.

{¶17} Aside from appreciation due to the construction of buildings, Ms. Shupert presented no evidence on how much the land appreciated during the marriage. Moreover, Ms. Shupert points to no evidence that establishes a causal relationship between any contributions either party made toward farm operations and any other increase in the value of the farmland. While Wilson generally testified that fertile farmland was worth more than farmland that was less fertile, he never testified that the couple's contributions to farm operations increased the value of the land in the case. In fact, Wilson specifically testified concerning the Greenlee Road farm that any increase in value, aside from the value from the buildings constructed during the marriage, was due to: "The market. Supply and demand. What ground's bringing. What [farms] are brin[g]ing." In other words, it was passive income.[1]

{¶18} In her reply brief, Ms. Shupert argues that she obtained tobacco grants that "increased the marital appreciation." (Reply Br. 3.) The trial court found that the grant money was used to purchase and upgrade harvesting equipment, and the parties

---

[1] In its decision, the trial court interprets this testimony as applicable to both farms. However, at the time Wilson gave this testimony, he was testifying about the Greenlee Road farm. Neither party asked him about the cause of any appreciation (other than buildings constructed during the marriage) of the State Route 770 farm.

stipulated that the "marital value" of the equipment was $80,000.  However, Ms. Shupert cites no evidence that establishes a causal relationship between the grants and resulting equipment upgrades and purchases and an increase in the value of the Greenlee Road and State Route 770 real estate.

**{¶19}**  Therefore, the trial court's decision that there was insufficient evidence to prove that any appreciation of the farmland (aside from that due to the construction of buildings during the marriage) was anything but passive growth or market-driven in nature is supported by the manifest weight of the evidence.  Accordingly, we overrule the first assignment of error.

### B.  Appreciation and the Equitable Division of Martial Property

**{¶20}**  In her fifth assignment of error, Ms. Shupert complains that the trial court erred when it divided the marital property because it mistakenly failed to include the marital appreciation of the farms in its calculations.  We have already rejected her contention in the first assignment of error that the value of that appreciation is the full appraised value of the farms after the marriage terminated.  However, Ms. Shupert is correct that even if we reject this argument, the court should have included in its calculations the $64,500 in marital appreciation of the farms due to the buildings constructed during the marriage.

**{¶21}**  On page 31 of the amended decree, the court summarized its division of the marital property.  It states which party will retain which marital assets and the total value of marital property in each party's possession.  Then based on those figures, on page 32 of the decree, the court ordered Mr. Shupert to pay Ms. Shupert a distributive award to make the division of marital property equitable.  Despite the court's extensive

findings on the issue of the farm appreciation and unequivocal conclusion that $64,500 of that appreciation constitutes marital property, the court apparently overlooked this asset in its summary.  Thus, the court's calculation of marital assets in Mr. Shupert's possession is incorrect – it is too low.  The court used this incorrect calculation when it determined the amount of the distributive award.  Because the court mistakenly omitted the $64,500 in appreciation from its calculations, we sustain the fifth assignment of error.  On remand, the court must issue a new order that includes this appreciation in re-dividing the property.

## IV.  Crop Insurance

**{¶22}**  In the second assignment of error, Ms. Shupert argues that the trial court's valuation of crop insurance proceeds was against the manifest weight of the evidence. A trial court's valuation of property is reviewed under the manifest weight of the evidence standard.  *Brown v. Brown*, 4th Dist. No. 02CA689, 2003-Ohio-304, ¶ 13.  See Section III.A. for an explanation of this standard.

**{¶23}**  The trial court determined that the crops that existed when the marriage terminated in November 2007 were marital property, and thus the gross proceeds from the sale of those crops were marital property subject to division.  The court also held:

> Additionally subject to marital division are the crop insurance proceeds for the 2007 crops, equaling the sum of $25,587.00.  It is noted the premium notice for crop insurance was dated August 20, 2007 (Defendant's Exhibit "M").  The premium of $6,953.00 was paid October 20, 2007 with check number 3330, as drawn on the parties joint bank account held at The First State Bank (Plaintiff's Ex. 39).  The premium amount shall be deducted from the $25,587.00 insurance check received by Plaintiff, thereby leaving the *net* sum of **$18,634.00** from 2007 crop insurance proceeds subject to marital division.

Thus, the court determined that the marital value of the insurance proceeds was the

amount of proceeds received minus the cost of the premium payment. In taking this approach, the court permitted Mr. Shupert to get full credit for the amount of the premium payment as though he paid it with his separate property.

{¶24} Ms. Shupert complains that the court erred when it deducted the premium payment from the proceeds because Mr. Shupert paid the premium with marital funds, not his separate property. We agree. As the trial court found, Mr. Shupert paid the premium during the marriage, i.e., in October 2007, with money from the couple's joint bank account from First State Bank. There is no evidence that the money used qualifies as Mr. Shupert's separate property. Therefore, the court's valuation of the insurance proceeds is against the manifest weight of the evidence. Because the premium was paid with marital funds, the court should have valued the proceeds at $25,587.00 instead of improperly giving Mr. Shupert credit for paying the premium.

{¶25} Mr. Shupert argues that to achieve an equitable property distribution, a trial court may, in its discretion, use "alternate valuation dates where reasonable under the particular facts and circumstances of the case." (Appellant's Br. 5). He argues that the October 2007 premium was "offset by the various withdrawals made by Defendant [from First State Bank] totaling approximately $8,755.00. [Ms. Shupert's] withdrawals were made in October and November of 2007 * * *, the same time frame the crop insurance premium was paid." (Appellant's Br. 6). Thus, he claims that "[t]o achieve an equitable distribution of property, the trial [c]ourt used the alternate valuation date which is within the discretion of the trial [c]ourt." (Appellant's Br. 6).

{¶26} However, the trial court's decision gives no indication that it used an alternate valuation date when it determined the value of the insurance proceeds. Mr.

Shupert essentially argues that Ms. Shupert unfairly took money from a marital account at First State Bank immediately before the marriage terminated, so the court gave him a credit for the premium payment to offset his loss from her actions. There is no support for this contention in the court's decision. Examining the First State Bank account, the trial court found:

> The evidence presented at trial reflects that Ms. Shupert made various withdrawals immediately prior to the parties['] separation in the approximate sum of $8,755.00. [Ms. Shupert] appropriately argues that at the time of said withdrawals/expenditures, it was a joint account of co-mingled marital monies, to which she had every legal entitlement. As a result of said expenditures, Plaintiff had Defendant removed from the account for future authorized withdrawals/expenditures, taking sole possession of the account balance (approximately $3,000.00). As the evidence was convoluted at best, the Court concludes that there is insufficient evidence to determine reconciliation or marital division of said account, as each of the parties mutually exhausted all funds from the jointly held account immediately prior to and subsequent to their separation.

Thus, the court acknowledged Ms. Shupert's withdrawals but ultimately found the evidence regarding the account insufficient for the court to consider the depleted funds in its distribution of marital property. Mr. Shupert did not appeal this finding.

{¶27} In sum, because Mr. Shupert paid the crop insurance premium with marital funds, the trial court's valuation of the crop insurance proceeds is against the manifest weight of the evidence. Accordingly, we sustain the second assignment of error. On remand, the court must value the crop insurance proceeds at $25,587.00. Then, the court must issue a new order re-dividing the property using the corrected figure.

V. Value of Marital Livestock

{¶28} In the third assignment of error, Ms. Shupert contends that the trial court

erred when it valued the marital livestock.  Again, we review a trial court's valuation of property under the manifest weight of the evidence standard.  *Brown*, *supra*, at ¶ 13. See Section III.A. for an explanation of this standard.

{¶29}  Mr. Shupert owns a 30% share of the farming operation that owned the livestock.  The livestock at issue existed during the marriage and was sold over the course of several months after the marriage terminated.  First, Ms. Shupert complains that the court miscalculated the gross proceeds from these sales, which caused the court to undervalue Mr. Shupert's 30% share of those proceeds.

{¶30}  The trial court held that the gross proceeds were:  1.) $65,938.02 for hogs sold to Union Producers; 2.) $58,967.06 for hogs sold to Union Stockyards ; and 3.) $62,330.12 for steers sold to Manning.  Thus the total gross proceeds from the sale of marital livestock was $187,235.20.  The court held that Mr. Shupert's share of the proceeds was $56,170.56 ($187,235.20 x 30%).  Ms. Shupert advocated for all of these figures at trial and provided documentation to support them.

{¶31}  On appeal, Ms. Shupert contends that the total gross proceeds were actually $287,235.30.  This figure contradicts the one Ms. Shupert offered at trial. Moreover, Ms. Shupert points to nothing in the record to support her $287,235.30 total. Therefore, we question whether her argument on appeal is premised on a $100,000 mathematical error.  Because the trial court's $187,235.20 figure for total gross proceeds is supported by the evidence Ms. Shupert introduced at trial, it is not against the manifest weight of the evidence.  Thus, the court correctly calculated Mr. Shupert's 30% share of the gross proceeds as $56,170.56, and we overrule this portion of the third assignment of error.

**{¶32}** Next, Ms. Shupert contends that the court erred by not using $56,170.56

as the figure for the value of the marital livestock when it divided the marital property.  In

valuing the livestock, the court agreed with Mr. Shupert that his 30% share of the gross

proceeds should be offset by the costs of production he incurred after the marriage

terminated in November 2007.  The trial court made the following findings about the

costs of production:

> [T]he Court adopts the testimony of Plaintiff as true and accurate as
> relates to his average cost per pound of weight produced.  It is noted that
> Plaintiff did not request nor argue inclusion of labor expense as a cost of
> production in raising feeder pigs/calves to market weight.
>
> * * * Plaintiff and/or his farming partners sold approximately 542
> head of market hogs at United Producers between the period of January
> 11, 2008 and April 23, 2008.  Plaintiff's unchallenged testimony was that
> the market hogs typically sold at a weight of approximately 265 pounds,
> and that his average cost of production was $.45 per pound.  The 542
> head of market hogs sold * * *, with an average weight of 265 pounds
> each, would equal 143,630 total pounds * * *, with gross proceeds of
> $65,938.02 ** *.  When taking into consideration the actual cost of $.45
> per pound of production, multiplied by the total pounds marketed
> (143,630), the total cost to get the 542 hogs to market at United Producers
> equals the total sum of $64,633.00.  Taking the gross proceeds of
> $65,938.02 minus the cost of production of $64,633.00, the net proceeds
> for marital property distributive award equals **$1,305.02**.
>
> * * * Using the average weight of 265 pounds per head of market
> hogs sold at Union Stockyards, multiplied by the total number of market
> hogs sold (383), equals 101,495 total pounds of market hogs marketed by
> Plaintiff through Union Stockyards, with gross proceeds equaling
> $58,967.06.  When taking into consideration the actual cost of $.45 per
> pound of production, multiplied by the total pounds marketed (101,495),
> the total cost to get the 383 hogs to market at Union Stockyards equals
> the total sum of $45,673.00.  Taking the gross proceeds of $58,967.06
> minus the cost of production of $45,673.00, the net proceeds for marital
> property distribution award equals **$13,294.06**.
>
> * * * Plaintiff testified that the average market steer sold to Manning
> weighed 1,150 pounds, further testifying that the cost of production for a
> pound of beef equaled $.85 per pound of weight gained.  By multiplying
> the average weight of each market steer (1,150) by the average cost of

production of $.85 per pound of weight gained, the average cost to produce each market steer sold equals the sum of $977.50.

Complicating the calculation of net proceeds received by Plaintiff for the market steers sold to Manning, is the fact that only the first four sales of approximately eleven different loads/sales specifically identify the exact number of steers sold during that particular transaction. Of the four sales which specifically identified the number of steers sold, it calculates to the average gross proceeds for steer sold equaling $1,083.82. Since the exact number of steers sold in each of the individual eleven loads sold to Manning is not available to the Court for calculation, the Court must rely on the average profit of 9.81%, multiplied by gross sales of $62,330.12, for net proceeds for Plaintiff from the sale of market steers to Manning equaling the sum of **$65,114.58**.

In summary, Plaintiff's net proceeds from the sale of market hogs and market steers which were in existence at the time of termination of the parties marriage, is * * * $20,713.66[.]

Lastly, on the issue of livestock, it is noted that for purposes of marital property distributive award, the net proceeds of $20,713.66 is reduced to Plaintiff's 30% share, or **$6,214.10**. (Emphasis sic.)

**{¶33}** Ms. Shupert does not disagree with the general premise that Mr. Shupert is entitled to recoup costs he paid from separate property for the production of the marital livestock after the marriage terminated. However, she contends that he failed to prove what these costs were. Ms. Shupert argues that Mr. Shupert testified about the average cost per pound to produce the hogs and cattle but never provided the court with a breakdown of how much of those costs were paid during and after the marriage. And she argues that with regard to feed costs, Mr. Shupert had none after the marriage ended because he fed the livestock with marital crops.

**{¶34}** Mr. Shupert claims that he testified about the expenses he incurred after the marriage. (Appellee's Br. 2.). He argues that Ms. Shupert stipulated that after the marriage ended, he spent "$.85 cents per pound for cattle and $.45 cents per pound to produce hogs." (Appellee's Br. 7). In his Statement of the Case, he also contends that

some of the operation's livestock feed is purchased as evidenced by the couple's tax returns.  (Appellant's Br. 2).

**{¶35}** Mr. Shupert gave the following testimony at trial:

MR. GRIMES:        Okay do you have a cost that it would take to produce basically a per pound price for cattle in 2007?

MR. SHUPERT:      I would say we're talking in the .80 to .85 cent range.

MR. GRIMES:        .85 cents?

MR. SHUPERT:      Yes per pound.

MR. GRIMES:        And for hogs during that same period of time, what was your cost per pound?

MR. SHUPERT:      I'd say .45 cents.

**{¶36}** In its decision, the trial court essentially found that Mr. Shupert paid 45 cents per pound to produce hogs and 85 cents per pound to produce cattle *after the marriage ended.*  This finding is unsupported by the evidence.  Mr. Shupert testified about the production cost per pound for cattle and hogs in 2007.  He did not testify about how much of those costs were paid during and after the marriage, i.e., before and after November 12, 2007.  And while Ms. Shupert acknowledges that she stipulated that it costs 85 cents per pound to produce a cattle and 45 cents per pound to produce hogs, she never entered into a stipulation about when the costs were paid.

**{¶37}** In the absence of competent, credible evidence about what costs Mr. Shupert paid after the marriage ended, the trial court should have valued the marital livestock at $56,170.56 in its property division.  Accordingly, we sustain the third assignment of error to the extent Ms. Shupert contends that the court improperly deducted production costs from Mr. Shupert's 30% share of the gross proceeds from

livestock sales.  On remand, the court must issue a new order re-dividing the property using the corrected figure.

VI.  Payment of Federal Income Taxes

**{¶38}**  In her fourth assignment of error, Ms. Shupert contends that the trial court improperly gave Mr. Shupert credit for paying the couple's 2007 federal income tax debt in its property division calculations.

**{¶39}**  The parties agree they had to pay $26,352 in federal income tax on their 2007 joint return and that this was a marital debt.  They also agree that Mr. Shupert paid this debt after the marriage termination date.  However, Ms. Shupert complains that Mr. Shupert paid the debt with marital funds, and the court's property division calculations do not properly reflect that fact.  Mr. Shupert contends that he paid the debt with his separate property.

**{¶40}**  Prior to the marriage, Mr. Shupert had a Certificate of Deposit at Merchant's National Bank.  He offered into evidence a document stating that the value of the Certificate of Deposit was $51,526.56 in March 1997.  Sometime during the marriage, he transferred all of this money into another Certificate of Deposit at NCB.  The trial court found that the NCB money was primarily used "to pay the reconciliation of the farm partnership books of [Mr. Shupert] and his brother(s)."  The court noted that although Mr. Shupert did not discuss the $51,526.56 in closing arguments, it appeared that he proposed the money was his separate property.

**{¶41}**  The court rejected Mr. Shupert's argument and concluded that the money in the NCB account was marital property.  The court explained that Mr. Shupert had the burden to trace the Merchant's funds as separate property with reliable evidence.  The

court found that the Merchant's funds were "co-mingled in the NCB account for many years with annual farm income monies generated subsequent to the marriage" and that Mr. Shupert "has failed to provide *traceable* evidence of the claimed separate asset, thereby transmutation has occurred and otherwise separate funds are converted to marital property." (Emphasis sic.)

**{¶42}** Mr. Shupert refutes this finding on appeal. He argues that all of the NCB funds constitute his separate property. Alternatively, he argues that the portion of the NCB funds that came from his Merchant's Certificate of Deposit constitute his separate property. However, Mr. Shupert did not file a cross-appeal, and these arguments seek to change the trial court's judgment. Therefore, we cannot address them. *Nagel v. Horner*, 162 Ohio App.3d 221, 2005-Ohio-3574, 833 N.E.2d 300, ¶ 10 (4th Dist.), citing App.R. 3(C)(1) ("A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4"). The court's determination that the NCB funds constitute marital property stands.

**{¶43}** Mr. Shupert presented evidence that the NCB account had $102,741.28 in it as of September 28, 2007, and on December 28, 2007 (after the marriage termination date) it had $104,096.76 due to an interest credit. Mr. Shupert testified that he took all of the money from NCB and put it into an account at Liberty Savings Bank. Documentary evidence shows he opened the account on February 1, 2008 (after the marriage terminated) in his own name. Mr. Shupert testified that he used part of the

NCB money to reconcile his portion of the farm book, which the parties agree was a marital debt. He initially testified that the amount owed was $75,830.18 and submitted a page from the farm account book that confirmed this. However, he later testified that he paid $76,582.00 to reconcile his portion of the farm book, and account records from Liberty Savings Bank show that he wrote his brother a check for this amount, not $75,830.18. Mr. Shupert also testified that he used $26,352.00 to pay the couple's 2007 federal tax debt. Thus, Mr. Shupert admitted that he essentially depleted the NCB account to pay marital debts.

{¶44} The court found that the farm book debt was $75,830.18 and that the NCB account had been "fully expended in paying" this debt. It valued the NCB account at $0 when it divided the marital assets. The court held that because the NCB account was depleted to pay the marital farm book debt, the $75,830.18 payment would also "not be considered as a liability for purposes of reconciliation of division of property." So in the court's division of marital property on page 31 of its amended decree, the court did not list the farm book reconciliation debt as a liability.

{¶45} However, the court subtracted the $26,352 tax liability from the value of marital assets awarded to Mr. Shupert to come up with a figure the court characterized as the "TOTAL MARITAL ASSETS IN [MR. SHUPERT'S] POSSESSION." In other words, the court treated the debt as though Mr. Shupert paid it with his separate funds. Then the court used this total to determine the amount of the distributive award Mr. Shupert had to pay to make the property division equitable. Ms. Shupert argues that by improperly giving Mr. Shupert credit for paying the taxes, the court's figure for total marital assets in his possession is too low by $26,352, so her distributive award is

likewise too low.  We agree.

{¶46}  The NCB money was marital property.  The undisputed evidence showed that the NCB money, which exceeded $100,000, was expended to pay the farm book reconciliation *and* the 2007 federal income tax debt.  Thus, the court's finding that the NCB account was "fully expended" in paying the farm book debt was against the manifest weight of the evidence.  See Section III.A. above for an explanation of this standard.  In other words, the NCB account was depleted with the payment of two marital debts, not just one as the court found.  Therefore, Mr. Shupert was not entitled to credit for paying the tax liability as though he did so with his separate property.

{¶47}  Accordingly, we sustain the fourth assignment of error.  On remand, the court should delete the $26,352 federal tax liability from its calculations.  Then, the court must issue a new order re-dividing the property without inclusion of that figure.

### VII.  New Property Division

{¶48}  In her sixth assignment of error, Ms. Shupert argues that the trial court's "reconciliation was flawed and not supported by the evidence as set forth in the first five assignments of error."  Ms. Shupert created a table of what she believes the actual division of marital property and amount of her distributive award should be and urges this court to adopt her table.  However, Ms. Shupert's table assumes that we will sustain all of her assignments of error; we did not.  Thus, she incorrectly includes the post-marriage appraised value of the Greenlee Road and State Route 770 farms in her calculations instead of just the marital appreciation of $64,500 for these properties.  Moreover, as noted above we are remanding this matter for the trial court to re-divide the property in light of our other findings.  Accordingly, we overrule the sixth assignment

of error.

## VIII.  Summary

**{¶49}**  We overrule the first assignment of error and sixth assignment of error.

We sustain the second, fourth and fifth assignments of error.  We overrule the third

assignment of error in part and sustain it in part.  We remand for further proceedings

consistent with this opinion.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

Kline, J., dissenting, in part.

{¶50}  I concur in judgment and opinion as to assignments of error two, three, four, five, and six.  I respectfully dissent, however, regarding the first assignment of error, "because I agree with the view that supports keeping the burden on the spouse seeking to declare the appreciation as separate."  *Harrington v. Harrington,* 4th Dist. No. 08CA6, 2008-Ohio-6888, ¶ 24 (Kline, J., dissenting).  Here, I would require Mr. Shupert to prove that the appreciation was passive and separate.

{¶51}  Accordingly, I dissent, in part.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, REVERSED IN PART, and the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J.:  Concurs in Judgment and Opinion.
Kline, J.:  Concurs in Judgment and Opinion as to Assignments of Error II, III, IV, V, & VI; Dissents with Opinion as to Assignment of Error I.


For the Court


BY: _____
      William H. Harsha, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**