[Cite as *Stuckey v. Stuckey*, 2015-Ohio-5061.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| William Stuckey, | : | |
| Plaintiff-Appellant, | : | Case No. 14CA3643 |
| v. | : | |
| Melinda Stuckey, et al., | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| Defendants-Appellees. | : | **RELEASED: 12/3/2015** |

_____

<u>APPEARANCES</u>:

R. Tracy Hoover, Hoover Law Group, LLC, Portsmouth, Ohio, for appellant.

Michael H. Mearan, Portsmouth, Ohio, for appellee Melinda Stuckey.

_____

LUPER SCHUSTER, J.*

{¶ 1} William Stuckey appeals from the judgment of the Scioto County Court of Common Pleas, Division of Domestic Relations, in this contested divorce action. Mr. Stuckey asserts that the trial court abused its discretion when it classified as a marital asset funds that Mr. Stuckey obtained after the agreed termination date of the marriage. Because the funds are traceable to other assets that were properly classified as marital, we find that the trial court did not abuse its discretion in classifying the funds as marital.

{¶ 2} Mr. Stuckey further asserts that the trial court erred in allocating and distributing real estate owned by the parties. Mr. Stuckey claims that these assets were traceable to property that he owned before the marriage. Because the trial court had discretion to resolve conflicting testimony regarding the tracing of premarital assets and the extent of Melinda Stuckey's contribution to the eventual acquisition of the disputed

properties during the marriage, we find no abuse of discretion on the part of the trial court in classifying the real estate as a marital asset.

{¶ 3}   Finally, Mr. Stuckey asserts the trial court erred in concluding that venue was proper despite the fact that neither party resided in Scioto County.  Mr. Stuckey asserts that this error in venue deprived the trial court of jurisdiction over the case. Because Mr. Stuckey himself initiated the action in Scioto County as the plaintiff who filed for divorce, he has waived any objection to venue.  Furthermore, once the trial court had obtained personal jurisdiction over the parties, the trial court was not deprived of subject-matter jurisdiction as a result of any defect in venue.

## I.  Facts and Procedural History

{¶ 4}   Certain facts are either stipulated by the parties or uncontested for purposes of this appeal.  Where facts are contested, they will be presented and discussed under the specific assignments of error.

{¶ 5}   The parties married on December 9, 2000.  The parties stipulated a termination date for the marriage of November 1, 2010, although the court would not enter its final decree of divorce until July 18, 2014.  No children were born of the union.

{¶ 6}   At the time the parties married, Mr. Stuckey owned and operated Woodland Lake Resort, near Hillsboro, Ohio, one of seven camping and recreational resorts that Mr. Stuckey owned at various times prior to and during the marriage.  Mrs. Stuckey was an employee with the resort doing general landscaping and animal-care duties in the resort stables.  Mrs. Stuckey came to the marriage with only a few personal possessions, an old pickup truck, and minor debt.  In addition to working, Mrs. Stuckey was drawing social security disability benefits.  Mr. Stuckey came to the marriage with significant personal

property and real estate assets, somewhat offset by equally substantial tax debts owed to the state and the Internal Revenue Service ("IRS").

{¶ 7} During the course of the marriage, one resort property and two personal residences owned by the parties suffered fire damage. The couple reinvested insurance proceeds from two of these fires in real property and chattel, further complicating the tracing process. In addition, due to Mr. Stuckey's IRS liens, the formal title to real estate and vehicles did not always reflect the parties' relative beneficial ownership.

{¶ 8} Soon after the marriage, Mrs. Stuckey voluntarily filed to terminate her social security disability benefits. She continued working for Woodland Lake Resort at a higher rate of pay. The social security administration would later demand repayment of some of Mrs. Stuckey's benefits for the period when she had been both drawing benefits and working for the resort.

{¶ 9} After the parties separated in 2010, Mrs. Stuckey filed for divorce in Pike County in June 2011. Although she would eventually dismiss that case voluntarily in December 2012, the parties did engage in substantial motion practice that resulted in support payments payable by Mr. Stuckey and the freezing of certain financial assets held by Mr. Stuckey. Also in 2012, Mr. Stuckey's involvement in drug trafficking and his relationship with a minor female led to his indictment by the Scioto County prosecutor on a long list of criminal charges. Mr. Stuckey later pleaded guilty to one count of corrupt activity with a minor and two counts of felony drug trafficking, resulting in a stated prison term of 14 years.

{¶ 10} Mrs. Stuckey admits that after Mr. Stuckey was incarcerated, she began selling off personal property, including farm equipment, vehicles, jewelry, and firearms in order to raise money to support herself. She also collected money from hay harvests and

logging on the couples' property.  The parties presented extensive and often conflicting testimony regarding the origin, disposition, ownership, value, and sale amounts of all these items.

{¶ 11} While incarcerated, Mr. Stuckey obtained counsel and filed the complaint in the present case in the Scioto County Court of Common Pleas, Domestic Relations Division, on February 4, 2013.  Mrs. Stuckey does not contest service of the complaint or the court's jurisdiction over subsequent proceedings.  Both parties were represented by counsel and the matter proceeded to a two-day hearing on April 21 and April 22, 2014.  Mr. Stuckey obtained a temporary transfer from his penal institution to the Scioto County jail so that he could personally attend and testify, and agreed to reimburse the costs of his transportation and local detention.  On July 18, 2014, the trial court issued its judgment entry granting the divorce and resolving the contested property and financial issues.

## II.  Assignments of Error

{¶ 12} Mr. Stuckey assigns the following errors for our review:

[1.] The trial court erred in its characterization of the separate and marital assets.

[2.] The trial court erred in its distribution of the property.

[3.] The trial court erred by finding the venue to be proper

## III.  Characterization of Separate and Marital Assets

{¶ 13} When dividing property in divorce proceedings the court must award each spouse his or her separate property.  *Harrington v. Harrington*, 4th Dist. No. 08CA6, 2008-Ohio-6888, ¶ 11, citing R.C. 3105.171(D).  A trial court's characterization of property as either separate or marital will be reviewed on appeal under a manifest weight of the evidence standard of review.  *Shupert v. Shupert*, 4th Dist. No. 12CA940, 2013-Ohio-604,

¶ 10.  Thus, the trial court's characterization of property as marital or separate will not be reversed if it is supported by some competent, credible evidence.  *Id.*  This deference is premised on the fact that the finder of fact is in a superior position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co., Inc.  v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  The finder of fact is free to accept or reject all, part, or none of the testimony of each witness.  *Harrington* at ¶ 11.  The comingling of separate property with marital property does not destroy the separate character of the property, except when the separate property is no longer traceable.  *Nance v. Nance*, 4th Dist. No. 95CA553 (Mar. 6, 1996); R.C. 3105.171(A)(6)(b).  The party seeking to establish that a particular asset should be classified as separate property bears the burden of proof by a preponderance of the evidence to trace the asset to separate property.  *Id.*

{¶ 14} Pursuant to R.C. 3105.171(H), the record title status in property by one, both, or neither spouse is not conclusively determinative of whether the property is marital or separate.  "In other words, property held jointly may ultimately be determined to be separate, while other property held individually may, in fact, turn out to be marital."  (Citations omitted.)  *Barkley v. Barkley*, 119 Ohio App.3d 155, 161 (4th Dist.1997).

{¶ 15} On appeal, Mr. Stuckey asserts the trial court erred in allocating as marital property four substantial assets:

- An identifiable pool of funds (the "Stuckey Funds") in the amount of $435,000 paid to Mr. Stuckey some nine months after the de facto termination date of the marriage

- A parcel of real estate located at 695 Hungry Hollow Road, Lucasville, Pike County, Ohio, valued at $175,000 by the trial court

- A parcel of real estate located at 166 Hungry Hollow Road, Lucasville, Pike County, Ohio, valued at $12,500 by the trial court

- A parcel of real estate located at 34 Dry Run Road, Otway, Scioto County, Ohio, valued at $20,000 by the trial court

### A. The Stuckey Funds

{¶ 16} The Stuckey Funds consist of $435,000 paid to Mr. Stuckey in August 2011, some nine months after the agreed-upon termination date for the marriage. The money was initially on deposit in an account with Farmer's Bank of West Virginia held solely by Mr. Stuckey. The trial court traced these funds as follows in its findings of fact: prior to the marriage, Mr. Stuckey held some of his resort properties, including one known as Woodland Lake Resort, through a corporation named Royal Oak Resort Club, Inc. ("RORC"). In December 2003, RORC sold its interest in Woodland Lake Resort to two persons, Clint Hackney and Rhea Tyree, in a transaction described by Mr. Stuckey as a land contract. Mr. Stuckey did not introduce documentary evidence of the land contract at trial, but the record does contain a warranty deed conveying the property.

{¶ 17} RORC was formally dissolved as a corporation in April 2005. In January 2006, again during the term of the marriage, Mr. Stuckey organized a new holding entity, W/M Peaceful Dove, LLC ("Peaceful Dove"). Peaceful Dove immediately obtained title to the Woodland Lake Resort from Hackney and Tyree through a warranty deed. Both Mr. and Mrs. Stuckey described this transaction as the result of a default under the original land contract conveying Woodland Lake Resort to Hackney and Tyree from RORC. Other than the deed of conveyance from Hackney and Tyree to Peaceful Dove, Mr. Stuckey submitted no documentary evidence of the terms of the transaction, prior payments received in the course of the rescinded purchase, or other terms supporting the

conveyance. In 2007, Peaceful Dove sold Woodland Lake Resort to K.M. Retreat, an entity controlled by Kevin Manley. The parties executed and recorded a mortgage in the amount of $475,000 in connection with this transaction. In August 2011, Kevin Manley personally executed a wire transfer of $435,000 into Mr. Stuckey's Farmer's Bank account in what Mr. Stuckey described as final payment.

{¶ 18} On April 4, 2012, pursuant to Mr. Stuckey's ongoing criminal proceedings in the Scioto County Court of Common Pleas, General Division, the general division ordered seizure of the remaining Stuckey Funds in the amount of $349,134.90. After entering the final judgment of conviction, the court in the criminal case then ordered release of the funds less the state's $70,000.00 cost of prosecution in the criminal matter. The court accordingly released $279,134.90 to Mr. Stuckey. The court's entry in the criminal case, however, ordered that the funds be held in Mr. Stuckey's attorney's escrow account until any claims on the funds were resolved. Approximately one month later, on February 4, 2013, the domestic court issued a mutual restraining order barring the parties from disposing of, or dissipating, assets and personal property, including bank accounts. Thereafter, in direct violation of both court orders, Mr. Stuckey through his agents, principally his brother, removed funds from the Stuckey Funds to purchase a two-unit rental property under the name of B.B. Hope Found Rentals, LLC for $44,331, a tree service business known as B.B. Hope Tree Service, LLC for $50,125, and to pay attorney fees and other substantial expenses.

{¶ 19} Based on this history, the domestic court first found that the various breaks in ownership and difficulty in tracing the Stuckey Funds to originally separate property (the Woodland Lake Resort) compelled a finding that the Stuckey Funds were marital property. The court noted a complete absence of documentary evidence on the various

transactions involved, including any partial payments and periodic payments received. The court observed that although Woodland Lake Resort was conveyed in 2006 by a pre-marriage business entity, RORC, the conveyance back from that failed transaction was to an entity created during the marriage, Peaceful Dove. Peaceful Dove then sold Woodland Lake Resort to K.M. Retreat, again without documentation other than the mortgage; yet in 2011 it was Kevin Manley personally, not K.M. Retreat, that made the "final payment" to the Farmer's Bank account.

{¶ 20} We first agree with the trial court that it is of no importance that the Stuckey Funds in their present, liquid state were obtained nine months after the stipulated termination date for the marriage. The funds are clearly traceable to the sale of a property once held by Peaceful Dove, a business entity created during the marriage. The court should value all assets as of the termination date of the marriage. *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981). Here the court essentially treated the Stuckey Funds, as of that date, as an account receivable arising from the sale of marital property. Once the debt was traced to a potential marital asset, the date of payment that transformed an account receivable into liquid funds is immaterial.

{¶ 21} We next note, as did the trial court, that although these are substantial transactions underlying the Stuckey Funds, they nonetheless present a very small portion of numerous large transactions constituting the parties' complex financial dealings during the course of the marriage. Most of these transactions remain difficult to trace because of conflicting recollections of the parties, a lack of documentation, absence of sufficient context, and in some cases a complete lack of detail. We grant due deference to the trial court's superior position as finder of fact in hearing the often-incomplete and

contradictory evidence in this case. We conclude that the trial court's classification of the Stuckey Funds as marital property was not against the manifest weight of the evidence.

### B. The Hungry Hollow Road Properties

{¶ 22} The two Hungry Hollow Road properties were purchased in the parties' joint names following the complete destruction by fire of their previous marital residence located at 1772 Clark Chapel Road, Bidwell, Gallia County. The parties built their new marital residence, consisting of a 16-stall equestrian barn, equestrian arena, and living quarters, on the 695 Hungry Hollow Road parcel. The parcel at 166 Hungry Hollow Road was improved only with a trailer home, later occupied by a tenant.

{¶ 23} The trial court traced the funds used to purchase the Hungry Hollow Road properties to insurance proceeds from two separate fires suffered by properties owned by one or both parties. In 2001, shortly after the parties married, Woodland Lake Resort, at the time owned by Mr. Stuckey and later considered by the trial court to be his pre-marital separate property, suffered fire damage. Mr. Stuckey testified that his corporation, RORC, received an unspecified insurance payment from this fire. In August 2002 and April 2003, the parties used these insurance proceeds to purchase a house and two adjoining parcels, all located at 4960 St. Rt. 62, Hillsboro, Ohio, and titled in both parties' names. This briefly became the marital residence, but in 2004 the parties sold the Hillsboro property. The IRS took half the proceeds of the Hillsboro sale under a tax lien against Mr. Stuckey's one-half interest in the property, but allowed Mrs. Stuckey to collect her half of the net proceeds.

{¶ 24} The parties then purchased the Clark Chapel Road property in Mrs. Stuckey's name. Mr. Stuckey testified that the purchase price for the Clark Chapel Road property was $300,000, and that they made a down payment using funds from Mrs.

Stuckey's share of the sale of the Hillsboro property and his sale of personal property from his Woodland Lake Resort. The parties together took out a $100,000 mortgage for the balance, although the property was titled solely in Mrs. Stuckey's name. Again, the trial court noted that there were no supporting documents to support any of the financial terms of these transactions, particularly the described sale of personal property from the Woodland Lake Resort.

{¶ 25} The Clark Chapel Road property suffered a catastrophic fire in September 2006. The parties received insurance proceeds of $519,666.78 for real property loss and an additional $352,195.94 for loss of contents. Mr. Stuckey testified that the insurance proceeds for loss-of-contents coverage were restricted to reimbursement, so that the couple was obligated to actually purchase replacement items for their lost personal property before seeking reimbursement under the policy. Mrs. Stuckey testified that, in addition to the insurance proceeds, they received $140,000 from the sale of the land, although she could not say what happened to this money.

{¶ 26} Using the fire insurance proceeds from the Clark Chapel Road property, in 2007 the parties purchased 695 Hungry Hollow Road for $220,600 and 166 Hungry Hollow Road for $11,000, titling the properties in both their names. Additional insurance proceeds went to build the equestrian facility and attached living quarters on 695 Hungry Hollow Road, rebuild a bridge to provide access, and other improvements. On July 1, 2012, the 695 Hungry Hollow Road residence was completely destroyed by fire. Neither the structure nor the contents were insured, but the mortgage loan was satisfied by the bank's mortgage insurance.

{¶ 27} Based on this history, Mr. Stuckey argues that $50,000 of the acquisition price for the Clark Chapel Road property is traceable to Mrs. Stuckey's half-interest in the

Hillsboro property, $150,000 is traceable to his own sale of separate personal property at his Woodland Lake Resort, and $50,000 traceable to each party's share of the mortgage debt, giving him a two-thirds interest in the Clark Chapel Road property.  From this, Mr. Stuckey argues, the insurance proceeds from the Clark Chapel Road fire that were used to purchase the Hungry Hollow Road properties are traceable as two-thirds Mr. Stuckey's separate property and one-third Mrs. Stuckey's separate property, regardless of later comingling of funds or record title of the real property.

{¶ 28} The trial court concluded to the contrary that the Hungry Hollow Road properties should be marital properties.  Based on the evidence in the record, we find that the trial court's judgment is not against the manifest weight of the evidence.  While Mr. Stuckey first testified that the Clark Chapel insurance proceeds were the sole source used to purchase the Hungry Hollow Road properties, later testimony established there was in fact a mortgage on the property in an amount that was not specified.  Because Mr. Stuckey bore the burden of proof in order to establish that the funds used to purchase the Hungry Hollow Road properties were separate property, the trial court could accept, reject, or partially accept the related testimony, which was incomplete in any case.  The trial court properly classified the Hungry Hollow Road properties as marital.

### C.  The Dry Run Road Property

{¶ 29} Mr. Stuckey traces the origin of ownership of the Dry Run Road property to his sale of one of his resort properties.  Mr. Stuckey testified that he sold Royal Oak Resort, his separate pre-marital property, to Tom Trent.[1]  There is no indication whether this resort was at the time held personally by Mr. Stuckey, since he had previously

---

[1] Trent appears to be Mrs. Stuckey's brother.  Neither party claims that this family relation has an impact in the matter.

dissolved the corporate entity, RORC, that once held Royal Oak Resort and Woodland Lake Resort.  Mr. Stuckey testified that in exchange for Royal Oak Resort, Trent paid Mr. Stuckey enough to finish paying off some IRS liens and conveyed in trade properties at 34 Dry Run Road and 46 Dry Run Road.  The parties thereafter operated 46 Dry Run Road as a group home known as W/M Peaceful Dove.  The parties afterward sold 46 Dry Run Road and the group home and agreed on the distribution of the proceeds.  They retained joint title to 34 Dry Run Road.

{¶ 30}  We find that the trial court's attribution of 34 Dry Run Road as marital property is supported by the record and not an abuse of discretion. Again, Mr. Stuckey offered no documentary evidence to support the terms of the sale of Royal Oak Resort. The amount of IRS liens paid from this sale, the record ownership of Royal Oak Resort at the time of sale, and the allocated value of the Dry Run Road properties at the time of sale or exchange are not fully developed.  The trial court could reasonably determine that Mr. Stuckey had not met his burden of demonstrating that 34 Dry Run Road, titled in both parties' names, was nonetheless Mr. Stuckey's separate property.

{¶ 31} In summary, we find that the trial court did not err in its determination that the Stuckey Funds, the Hungry Hollow Road properties, and the Dry Run Road property were marital assets to be divided equally.  Mr. Stuckey's first assignment of error is overruled.

### IV.  Personal Property

{¶ 32} Mr. Stuckey's second assignment of error asserts that the trial court erred in its distribution of property.  While some of the arguments advanced here focus on incorrect characterization of assets as marital rather than personal, the bulk of the argument relates to the parties' testimony regarding considerable quantities of farm

equipment, vehicles, horses, furniture, and other items.  The trial court found that only $30,660 in personal property could be located and subjected to equitable division.  The trial court further found that the preponderance of objects itemized by the parties in various exhibits had either been destroyed by fire, liquidated, lost, or simply disappeared. The trial court noted that dissipation of these personal property items was in general undertaken in direct violation of one or more court orders.  The trial court observed in great detail that Mrs. Stuckey in particular had given incomplete, inconsistent, and often outright contradictory testimony regarding disposition of various items.  The trial court found that between the misconduct of the respective parties, no attempt would be made to locate, value, or trace any additional items.

{¶ 33} Although trial courts possess broad discretion to divide marital property, the Ohio Revised Code requires trial courts to divide marital property equitably between the parties. R.C. 3105.171(B); *Graves v. Graves*, 4th Dist. No. 14CA694, 2014-Ohio-5812, ¶ 14. In most cases, this requires the court to divide the marital property equally. R.C. 3105.171(C)(1). While equal division is the starting point of analysis for division of marital property, an unequal property division of itself does not amount to an abuse of discretion. *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988). "Equitable need not mean equal." *Id.* at 95.

{¶ 34} Mr. Stuckey argues on appeal that the parties purchased at least $352,000 of marital personal property between 2006 and 2007 under the terms of the Clark Chapel fire insurance, which required the parties to purchase replacement property and then seek reimbursement.  Mr. Stuckey also argues, with ample if inconsistent support in Mrs. Stuckey's varying deposition and trial testimony, that she knowingly sold, traded,

concealed, or sold for far less than market value various items of farm equipment, vehicles, firearms, or jewelry.

{¶ 35} In the global property settlement, the trial court made an equal division of all inventoried assets and liabilities as of the effective termination date of the marriage in 2010. The court assessed marital property in the form of cash, personal property, and real estate, awarding Mr. Stuckey $294,477.45 and Mrs. Stuckey $292,817.45. The trial court then charged Mr. Stuckey for certain amounts disbursed after 2010 from the Stuckey Funds without court permission, including the purchases of B.B. Hope Tree Service, LLC and the B.B. Hope Found Rentals property, attorney fees, the $70,000 cost of prosecution in Mr. Stuckey's criminal case, a bail bond charge, and Mr. Stuckey's miscellaneous expenses incurred while incarcerated. After adjusting both parties' distributive shares, including taxes on the remaining real estate and an appraisal fee, the trial court made a distributive award of the Hungry Hollow Road real estate to Mrs. Stuckey and an additional cash award of $90,817.45. In addition, the court distributed to Mrs. Stuckey half of the remaining personal property, amounting to $14,500. The court then made a distributive award to Mr. Stuckey, including the 34 Dry Run Road property, $16,160 in personal property, the B.B. Hope Found Rentals property, B.B. Hope Tree Service, LLC, and $20,545.73 in cash. The balance of Mr. Stuckey's share was charged off in the form of attorney fees already paid and criminal court costs paid. Based on the appraised value of the real properties, Mrs. Stuckey received, after deductions, a net distribution of $292,817.45. Mr. Stuckey received a net distribution of $151,161.73.

{¶ 36} It is readily discernable from this distribution that the trial court opted to charge Mr. Stuckey's share of the equally-divided assets with certain large disbursements he had taken for his own benefit. While the expenses for purchase of the tree service and

rental property are recouped in the form of an in-kind distribution, expenses for attorney fees, criminal court costs paid, and miscellaneous expenses while in prison are not recouped.  Meanwhile, the trial court chose not to charge Mrs. Stuckey for the identifiable personal property dissipated by her during Mr. Stuckey's later incarceration.

{¶ 37} The issue on appeal is not whether Mrs. Stuckey improperly sold or otherwise disposed of large numbers of items during Mr. Stuckey's initial incarceration; her own testimony establishes that she received at least $70,000 for various items, not including revenue from logging and haying on the couples' property.  Mrs. Stuckey admitted that she earlier told Mr. Stuckey the figure could be as high as $100,000.  All of these dispositions occurred in direct violation of various court orders. The question before us is whether the trial court correctly found that this admitted misconduct was not quantifiable or chargeable to Mrs. Stuckey's share.

{¶ 38} The court held that it was not, and we agree.  An appellate court reviewing whether a trial court abused its discretion when dividing marital property must view the property division in its entirety and consider the totality of the circumstances. *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984); *Byers v. Byers*, 4th Dist. No. 09CA3124, 2010-Ohio-4424. In light of Mr. Stuckey's own dissipation of funds from the Stuckey Funds, along with the general inability of the parties to value the overall amount of personal property that was liquidated or disappeared during the years immediately preceding the divorce action, it is impossible in this case to appraise the dissipated personal property with any reasonable accuracy.  Even Mr. Stuckey's brief on appeal does not attempt a comprehensive accounting upon which we could base any revision of the trial court's figures regarding personal property.

{¶ 39} Under a manifest weight standard of review, we find no error in the trial court's distribution of personal property and division of the marital property in the case. Mr. Stuckey's second assignment of error is overruled.

### V.  Venue

{¶ 40} Mr. Stuckey's third assignment of error argues that the trial court improperly accepted jurisdiction over the matter and that venue properly lies in another, unspecified county.  In her initial testimony, Mrs. Stuckey was defensive and vague about her actual residence at the time the action commenced.  She implied that she feared for her life if her permanent address were known, presumably due to Mr. Stuckey's narcotics connections.  At no time did she contest valid personal service.  In later testimony she conceded that she had resided in Scioto County for six months prior to filing the complaint.  Mr. Stuckey himself was incarcerated outside Scioto County, but chose to commence the action in Scioto County.

{¶ 41} "When a party files a case in an improper venue, the defending party may assert improper venue as a Civ.R. 12 defense.  See Civ.R. 3(C).  When the defending party properly raises the defense, the court must transfer the case to a proper venue." *Chrysler Fin. Servs. v. Henderson*, 4th Dist. No. 11CA4, 2011-Ohio-6813, ¶ 45.  Venue should not be confused with jurisdiction as they are distinct legal concepts. *Craig v. Consol. Rail Corp.*, 9th Dist. No. 13332 (Apr. 6, 1988); *Lorenz Equip. Co. v. Ultra Builders, Inc.*, 10th Dist. No. 92AP-1445 (Feb. 23, 1993).  A trial court that otherwise has jurisdiction over the parties and the subject matter of the case and renders a judgment will not see that judgment rendered void by collateral attack and assertions of improper venue in another forum.  Civ.R. 3(G); *Oiler v. Goldsmit-Black, Inc.*, 4th Dist. No. 82 CA 16 (May 14, 1984).

{¶ 42} Mrs. Stuckey eventually testified that she resided in Scioto County for six months prior to filing the complaint.  Moreover, this appeal is the first time that Mr. Stuckey has raised any question regarding venue in Scioto County, understandably since he chose it himself.  There is no basis to set aside the trial court's judgment based on a lack of venue.  Mr. Stuckey's third assignment of error is accordingly overruled.

## VI.  Disposition

{¶ 43} Based on the foregoing, appellant William Stuckey's three assignments of error are overruled and the judgment of the Scioto County Court of Common Pleas, Division of Domestic Relations, is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

*Tyack, J., & Sadler, J.:  Concur in Judgment and Opinion.

For the Court

BY:  _____
     Betsy Luper Schuster, Judge*

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

*Lisa L. Sadler, Betsy Luper Schuster, and G. Gary Tyack, Judges of the Tenth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.